1   **The Mirkhan Law Firm, APC**
2   Mehrshad Mirkhan, Esq., SBN: 201772
    1801 Century Park East, Suite 2400
3   Los Angeles, CA 90067
    Tel: (310) 984-6999
4   Fax: (888) 410-1390
    E-mail: mirkhan@mirkhanlaw.com
5   Web: www.mirkhanlaw.com

6   Attorneys for Defendants HALLOWS MOVIE INC., HALLOWS MOVIE LLC
    (Puerto Rico), HALLOWS MOVIE LLC (Louisiana), CROSSFACE LLC, LET IT
7   PLAY LLC, ALEX A. GINZBURG, DONGKWAN "TONY" LEE

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   BONDIT, LLC, a California limited        Case No.: 2:19-cv-09832-AB-RAO
     liability company,
13
            Plaintiff,                        **DEFENDANTS' NOTICE OF**
14                                            **MOTION & MOTION TO DISMISS**
                vs.                           **PURSUANT TO RULE 12(b)(6) OF**
15                                            **THE FEDERAL RULES OF CIVIL**
     HALLOWS MOVIE, INC., a Nova              **PROCEDURE**
16   Scotia corporation; HALLOWS
     MOVIE, LLC, a Puerto Rico limited
17   liability company; HALLOWS
     MOVIE, LLC, a Louisiana limited
18   liability company; UTOPIA FILM,          Date: March 6, 2020
     L.L.C., a Puerto Rico limited liability  Time: 10:00 am
19   company; CROSSFACE LLC, a                Place: Courtroom 7B
     Louisiana limited liability company;
20   LET IT PLAY, LLC, a Connecticut
     limited liability company; ALEX A.       Judge: Hon. Andre Birotte
21   GINZBURG, an individual;
     DONGKWAN "TONY" LEE, an
22   individual; HYUN KIM, an individual;
     JORGE ALBERTO MARTINEZ-
23   DAVILA, an individual,

24          Defendants.

25

26

27

28

**THE MIRKHAN LAW FIRM, APC**

## NOTICE OF MOTION & MOTION TO DISMISS

TO THE COURT AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 6, 2020, at 10:00 am in Courtroom 7B of the above-entitled court, Defendants HALLOWS MOVIE INC., a Nova Scotia corporation, HALLOWS MOVIE, LLC, a Puerto Rico limited liability company, HALLOWS MOVIE LLC, a Louisiana limited liability company, CROSSFACE LLC, a Louisiana limited liability company, LET IT PLAY LLC, a Connecticut limited liability company, ALEX A. GINZBURG, an individual, and DONGKWAN "TONY" LEE, an individual, (collectively, "Defendants"), will move this Court pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) to dismiss the following Claims for Relief contained in Plaintiff's Complaint:

**1) First Claim for Relief:  Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c):**

Defendants seek to dismiss Plaintiff's First Claim for Relief    on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**2) Second Claim for Relief:  Conspiracy to Commit Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c):**

Defendants seek to dismiss Plaintiff's Second Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Conspiracy to Commit Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

-ii-

### 3) <u>Third Claim for Relief:  Violation of California Penal Code §496</u>:

Defendants seek to dismiss Plaintiff's Third Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Violation of California Penal Code §496.  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 4) <u>Fifth Claim for Relief:  Money Had and Received</u>:

Defendants seek to dismiss Plaintiff's Fifth Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Money Had and Received.  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 5) <u>Tenth Claim for Unfair Competition</u>:

Defendants seek to dismiss Plaintiff's Tenth Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Unfair Competition under California law.  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 6) <u>Eleventh Claim for Conversion</u>:

Defendants seek to dismiss Plaintiff's Eleventh Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Conversion.  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 7) <u>Twelfth Claim for Fraudulent Conveyance</u>:

Defendants seek to dismiss Plaintiff's Twelfth Claim for Relief on the basis that the Complaint as written fails to allege sufficient facts that would support a cause of action for Fraudulent Conveyance.  The claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**Compliance with Local Rule 7-3:**

Prior to filing the present motion, counsel for Defendants met and conferred with Plaintiff's counsel at least 7 days prior to the filing of the motion and fully complied with Local Rule 7-3 of the Central District of California.  For details concerning the meet and confer effort, please refer to the Declaration of Mehrshad Mirkhan filed concurrently herein.

This motion will be made on the ground that the allegations in Plaintiff's Complaint are insufficient to support the claims for relief outlined above and the above seven claims for relief must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Mehrshad Mirkhan and the Exhibits attached thereto which has been filed concurrently herein, on all pleadings and papers on file in this action, and on other such matters and arguments as may be presented to this Court in connection with this Motion.

Respectfully Submitted.

Dated:          January 17, 2020                    THE MIRKHAN LAW FIRM, APC

                                                        /s/ Mehrshad Mirkhan
                                           By: _____
                                                        Mehrshad Mirkhan
                                                        ATTORNEYS FOR DEFENDANTS

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS & AUTHORITIES ............................................... 1

I.   INTRODUCTION ............................................................................................ 1

II.  SUMMARY OF RELEVANT FACTS............................................................. 3

    A.   PLAINTIFF'S LOAN CONSTITUTED ONLY 21% OF THE MOTION PICTURE'S FINANCING: ................................................................ 3

    B.   ALL DEFENDANT CORPORATE AND LIMITED LIABILITY COMPANIES WERE CREATED FOR THE PRODUCTION OF MOTION PICTURES:............................................................................. 3

    C.   PLAINTIFF HAS FAILED TO SHOW THE EXISTENCE OF AN ENTERPRISE:............................................................................... 4

    D.   PLAINTIFF HAS FAILED TO SHOW A PATTERN OF RACKETEERING ACTIVITY:....................................................... 4

    E.   PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANTS OBTAINED MONEY BY THEFT: ....................................................... 5

III. LEGAL ARGUMENT....................................................................................... 5

    A.   LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS:.... 5

    B.   PLAINTIFF'S FIRST CLAIM FOR RELIEF BASED ON VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT DOES NOT MEET THE REQUIREMENTS OF THE STATUTE AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(6):............................................. 6

    C.   PLAINTIFF'S SECOND CLAIM FOR RELIEF BASED ON CONSPIRACY TO VIOLATE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT DOES NOT MEET THE REQUIREMENTS OF THE STATUTE AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(6): .... 9

THE **MIRKHAN** LAW FIRM, APC

D.   PLAINTIFF'S THIRD CLAIM FOR RELIEF BASED ON A VIOLATION OF CALIFORNIA PENAL CODE §496 MUST BE DISMISSED BECAUSE THERE IS NO THEFT UNDER THE FACTS ALLEGED: .............................. 10

E.   PLAINTIFF'S FIFTH CLAIM FOR MONEY HAD AND RECEIVED MUST BE DISMISSED BECAUSE THE COMMON COUNT CONFLICTS WITH PLANTIFF'S OTHER CAUSES OF ACTION:...................................... 10

F.   PLAINTIFF'S TENTH CLAIM FOR UNFAIR COMPETITION UNDER CALIFORNIA LAW MUST BE DISMISSED BECAUSE THE FACTS ALLEGED DO NOT SUPPORT AN UNFAIR COMPETITION CLAIM: ...... 11

G.   PLAINTIFF'S ELEVENTH CLAIM FOR CONVERSION MUST BE DISMISSED BECAUSE THE REQUIREMENTS FOR A CONVERSION CLAIM HAVE NOT BEEN MET: ................................................... 13

IV. CONCLUSION ................................................................ 15

THE **MIRKHAN** LAW FIRM, APC

# TABLE OF AUTHORITIES

**Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511 (1994) 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).................................................................. 6

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555 (2007)......................... 6, 15

*Boyle v. US*, 556 US 938, 946 (2009)............................................................................ 7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* 20 Cal.4th
   163, 180 (1999) ........................................................................................................ 12

*DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ................................................ 7

*Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247 (2010) ................. 12

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)......... 9

*Ingels v. Westwood One Broad. Serv., Inc.,* 129 Cal. App. 4th 1050, 1060 (2005).... 12

*KB HOME v. Superior Court*, 112 Cal.App.4th 1076 (2003) .................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150–51 (2003)...... 11

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011)............................................ 13

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). 7

*Moore v. Regents of the Univ. of Cal.,* 51 Cal.3d 120, 136 (1990) ........................... 14

*Papasan v. Allain*, 478 U.S. 256, 286 (1986)............................................................. 6

*Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (2010) .......................... 14

*Rotea v. Izuel,* 14 Cal.2d 605, 611 (1939) ................................................................ 11

*Sedima, SP RL v. Imrex Co.*, 473 US 479, 496 (1985)................................................ 6

*Shroyer v. New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1044 (9th Cir. 2010)
   ...................................................................................................................................... 12

*United States v. Turkette*, 452 U.S. 576, 593 (1981)................................................. 7

*Zumbrun v. University of Southern California,*  25 Cal.App.3d 1, 14-15 (1972) ....... 11

**Statutes**

18 U.S.C. §1962(c) ................................................................................................ 2, 6

18 U.S.C. §1962(d) ............................................................................................... 9

Business and Professions Code section 17200 .......................................... 12

California Penal Code §496 ............................................................................. 10

Civ. Code § 3439.04(a)(1) ............................................................................... 14

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

In accordance with the Complaint filed by Plaintiff, this case concerns the financing of a feature-length motion picture entitled *Crossface*.  Complaint ¶1. Plaintiff contends that a $1.5 million loan was advanced by Plaintiff BondIt to Defendant Hallows Movie Inc., a Nova Scotia corporation (hereafter referred to as "HM-Canada"). Complaint ¶1.  The loan was funded on October 6, 2017.  Complaint ¶3.  The BondIt loan was collateralized by (i) a Kentucky film tax credit, (ii) a corporate guarantee from Defendant LET IT PLAY LLC, a  Connecticut  limited  liability company,  ("Let  It  Play"), and  (iii) personal guarantees from Defendant Ginzburg, Defendant DONGKWAN "TONY" LEE ("Lee") and Defendant Kim.  Plaintiff also admits that the BondIt loan was only a portion of the motion picture's total budget of $7 million dollars.  Complaint ¶3.

Plaintiff then contends that Defendant HM-Canada defaulted with respect to repayment of the BondIt loan and also defaulted with respect to certain obligations that was promised under the loan contract.  For example, it is alleged that HM-Canada never commenced the production of the motion picture and the motion picture was never made.  Complaint ¶4.  Plaintiff further alleges that in an effort to cure the default and address HM-Canada's failure to observe its repayment obligations, Defendants Ginzburg and Lee proposed to pledge to BondIt certain film tax credits on the motion pictures entitled *Utopia* and *The Recovery aka Above.*  Complaint ¶5.  Plaintiff then voluntarily accepted to amend its loan contract and received new guarantees pursuant to new security agreements with Defendants HALLOWS MOVIE, LLC, a Puerto Rico limited liability company ("HM-Puerto Rico") and UTOPIA FILM L.L.C., a Puerto Rico limited liability company ("Utopia Film-Puerto Rico").  Plaintiff then proceeds to allege that it agreed to the amendment to the original loan terms based on numerous representations made by Defendants which turned out to be false.  Complaint ¶¶7, 8.

1   Ultimately, the amended loan agreement was also defaulted and Defendants failed to

2   cure the default despite Plaintiff's repeated requests.  Complaint ¶9.

3          Despite the fact that the Complaint spends a total of 59 pages to provide a very

4   detailed picture of Plaintiff's version of facts, however the gravamen of the Complaint

5   has been summarized in the above two paragraphs and concerns Defendants' default

6   with respect to the repayment of Plaintiff's loan.  Moreover, it is important to note that

7   the multiple corporate entities that have been named as Defendants in this case were

8   created solely for the production of different movies as is customary in the motion

9   picture industry and as such cannot form an *enterprise* as is required for claims under

10  the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c).  Thus,

11  Plaintiff's attempt to justify asserting fourteen Claims for Relief is misplaced and many

12  of the Claims for Relief cannot withstand a Rule 12(b)(6) Motion to Dismiss.   In

13  particular, insufficient facts have been alleged to support the First, Second, Third, Fifth,

14  Tenth, Eleventh, and Twelfth Claims for Relief.  A close examination of the facts

15  alleged shows that with respect to the above mentioned Claims for Relief, only

16  conclusory facts have been alleged and the Complaint lacks *specific* facts that is needed

17  to support the asserted claims.

18         Similarly, Plaintiff's attempt to turn this case into some sort of illegal and/or

19  criminal activity on the part of Defendants must be stopped in its tracks.  In particular,

20  the allegations pertaining to the existence of an "enterprise" and "racketeering activity"

21  are completely without merit.  No facts have been alleged to support the existence of

22  an enterprise or to show a *pattern of racketeering activity*.  The remainder of this

23  Memorandum will address the reasons why each of the Claims for Relief specified

24  above cannot withstand a Rule 12(b)(6) Motion to dismiss.

25  ///

26  ///

27  ///

28  ///

THE **MIRKHAN** LAW FIRM, APC

## II.   SUMMARY OF RELEVANT FACTS

A.   <u>PLAINTIFF'S LOAN CONSTITUTED ONLY 21% OF THE MOTION PICTURE'S FINANCING</u>:

It is important to note that despite Plaintiff's comprehensive allegations and accusations of fraud, allegations that Defendants' shell game was unraveled, and the existence of an illegal enterprise, the BondIt loan constituted only 21% of the costs of the motion picture *Crossface*. This is based on Plaintiff's own allegations which state that the total budget for the motion picture was $7 million dollars. See Complaint ¶3.

B.   <u>ALL DEFENDANT CORPORATE AND LIMITED LIABILITY COMPANIES WERE CREATED FOR THE PRODUCTION OF MOTION PICTURES</u>:

Plaintiff's Complaint is designed to portray an image of a group of independent corporate entities in addition to individuals that are working together as a common enterprise. This image is wrong and not supported by the facts. While the corporate entities are independent and have been created to afford the necessary protections of corporateness, they are not controlled by any third party. Indeed, Plaintiff's own Complaint alleges that "Ginzburg and Lee were, and now are, the alter egos of HM-Canada, HM-Puerto Rico, HM-Louisiana, Crossface and Let it Play. Bondlt is further informed and believes, and based thereon alleges, that at all times relevant hereto, there is a unity of interest and ownership between Ginzburg and Lee, on the one hand, and HM-Canada, HM-Puerto Rico, HM-Louisiana, Crossface and Let it Play, on the other hand, such that any individuality and separateness between said Defendants have ceased." See Complaint ¶61.

Thus, by Plaintiff's own allegations, we are dealing with two individuals and multiple corporate and/or limited liability company entities which have been created for the production of different motion pictures. This is not an organized group of corporate entities that is working in concert with individual Defendants. Instead, the

-3-

opposite is true and we are dealing with two individuals who have created these corporate entities for the purpose of producing different motion pictures under the protection afforded by corporations and limited liability companies.

C.   <u>PLAINTIFF HAS FAILED TO SHOW THE EXISTENCE OF AN ENTERPRISE</u>:

There is nothing in the Complaint that shows the existence of a unified *enterprise* created to pursue a specific fraudulent purpose.  The facts alleged in the Complaint simply states that 1) Defendants breached their obligations under the loan contract by failing to do the things promised under the contract, 2) Defendants misrepresented and concealed certain facts in order to induce Plaintiff to amend the original contract terms, 3) Defendants were untruthful and were playing a shell game, and 4) Defendants refused to return Plaintiff's money despite repeated requests to do so.  Hence, there are no facts that show an enterprise created for the purpose of defrauding different lenders or for the purpose of fraudulently obtaining money from different sources.  Instead, this is a single instance of an alleged breach of contract and misrepresentation that only concerns Plaintiff BondIt.  Plaintiff is trying to portray the Defendants as professional fraudsters who are engaged in a pattern of fraudulent activity.  But Plaintiff IS NOT alleging a single instance of fraudulent conduct directed toward others.

D.   <u>PLAINTIFF HAS FAILED TO SHOW A PATTERN OF RACKETEERING ACTIVITY</u>:

In addition to lack of any *enterprise,* the Complaint also lacks any facts that shows a *pattern* of racketeering activity.  The entire Complaint pertains to 1) a single instance of a default in the repayment of Plaintiff's initial loan, 2) Plaintiff's voluntary amendments made to the terms of the initial loan, 3) alleged misrepresentation by Defendants to induce Plaintiff to make the voluntary amendment to the terms of the initial loan, and 4) non-payment of the loan.  There is no pattern of any kind and all facts alleged pertain to a single interaction between Defendants and the Plaintiff

-4-

THE **MIRKHAN** LAW FIRM, APC

pertaining to the *same* loan.  Thus, it is clear that Plaintiff has failed to show any *pattern* of racketeering activity.

E.  <u>PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANTS OBTAINED MONEY BY THEFT</u>:

The Complaint alleges in a very conclusory fashion that Defendants obtained money by *theft* and withheld that money from Plaintiff.  See Complaint ¶83.  However, no specific facts have been alleged to show that any theft took place.  Merely because Plaintiff believes that any money obtained by Defendants should have been immediately turned over to Plaintiff, does not make Defendants' conduct a "theft". The gravamen of the Complaint which is based on the facts alleged, support breach of contract and misrepresentation causes of action.  However, to claim that a theft took place, is a significant assertion which cannot be accepted unless specific facts are alleged that show a clear *theft* of money.  No such facts have been alleged here.

So long as Defendants came into possession of money in a legal manner, such possession cannot be termed as a "theft" solely because Plaintiff believes that it is entitled to such money.  While it is convenient for the Plaintiff to label the withholding of any money that it believes should be turned over to Plaintiff as an act of "theft", the facts alleged do no allow such legal conclusions to be drawn.  The Complaint as written does not contain any facts that would support Plaintiff's allegation of "theft".

### III. LEGAL ARGUMENT

A.  <u>LEGAL STANDARD FOR A RULE 12(b)(6) MOTION TO DISMISS</u>:

A motion to dismiss under Rule 12 (b) (6) of the Federal Rules of Civil Procedure requires the Court to treat well-pleaded facts in Plaintiff's Complaint as true. However, the Court need not accept as true  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010).  The Court is also not "bound

to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 256, 286 (1986).  A complaint that relies upon "labels and conclusions, and a formulaic recitation of the elements of a cause of action does not suffice to state a cause of action."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555 (2007). Furthermore, "actual allegations must be enough to raise a right to relief above the speculative level…." Id. In other words, a complaint must be "plausible on its face" which means that the plaintiff must plead "factual content that allows the court to draw the reasonable          inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678   (2009).   These principles modify the general rules of pleading as stated in Rule 8 (a)(2) of the Federal Rules of Civil Procedure which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"; Federal Rules of Civil Procedure, Rule 8 (a)(2).

B.    <u>PLAINTIFF'S FIRST CLAIM FOR RELIEF BASED ON VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT DOES NOT MEET THE REQUIREMENTS OF THE STATUTE AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(6):</u>

The Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO") prohibits specific conduct which has been defined within the statute.  The statute states in relevant part:  "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 U.S.C. §1962(c).

A violation of § 1962(c), requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim.  *Sedima, SP RL v. Imrex Co.*, 473 US 479, 496 (1985).  "an enterprise includes any union or group of individuals associated in fact" and that RICO

reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. US*, 556 US 938, 946 (2009). The RICO statute was enacted as a way to combat organized crime. Thus, the RICO statute is directed against criminal and/or unlawful enterprises that use the interstate commerce for their benefit. In fact, the United States Supreme Court has held that "as a measure to deal with the infiltration of legitimate businesses by organized crime, RICO was both preventive and remedial. *United States v. Turkette*, 452 U.S. 576, 593 (1981). The enterprise contemplated by RICO "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.,* at 583. In order to present a successful RICO claim, Plaintiff must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." *Id.* at 583. The "enterprise" is not the "pattern of racketeering activity"; it is an entity <u>separate and apart from the pattern of activity in which it engages</u>. *Id.* at 583.

A RICO claim based on mail and wire fraud must satisfy Federal Rule of Civil Procedure 9(b) by pleading with particularity the circumstances constituting fraud. See *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). In addition, facts must be alleged as to each individual defendant. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Finally, a RICO "enterprise" must be separate and distinct from the "person" conducting the racketeering activities of the enterprise. *DeFalco*, 244 F.3d at 307.

When the above legal analysis is applied to Plaintiff's Complaint, we immediately recognize that Plaintiff's RICO claim cannot withstand a Rule 12(b)(6) motion to dismiss. An examination of paragraphs 67 and 68 of Plaintiff's Complaint reveals that Plaintiff has failed to allege *facts* that show the existence of an "enterprise" that is engaged in a pattern of "racketeering activity". Instead, Plaintiff has resorted to conclusory allegations that merely repeats the requirements of a RICO claim. For example, Plaintiff alleges: "Specifically, Defendants, and each of them, were, and are, a union or group that are associated in fact, constitute an ongoing organization, and

-7-

THE **MIRKHAN** LAW FIRM, APC

THE **MIRKHAN** LAW FIRM, APC

function as a continuing unit. This is due to their contractual and financial relationship, their common ownership, their common goal of inducing others to enter into investment, financing, and business transactions, and their continuing and substantial interaction and involvement as alleged herein." Complaint ¶67. Plaintiff also alleges that "Enterprise engaged in, and its activities have an effect on, interstate and foreign commerce in connection with the Enterprise's business of enticing individuals and companies to enter into investment, financing, and business transactions with the Enterprise, based upon the Enterprise's false representations and other fraudulent conduct as set forth herein. Complaint ¶69. These are all conclusory allegations with NO SPECIFIC facts. While Plaintiff claims that the so called "enterprise" is in the business of enticing individuals and companies to enter into investment, financing, and business transaction, <u>not a single specific allegation has been made to show that the purported enterprise is defrauding anyone</u>. Perhaps Plaintiff is using its own experience with Defendants and its allegations of fraud with respect to Plaintiff's own dealings with Defendants as the basis for alleging that Defendants are in the business of defrauding others. Moreover, there is absolutely no mention of the structure of the so called enterprise, the manner of its activities, and facts showing that the enterprise is engaged in any kind of organized racketeering activity.

Plaintiff then alleges that Defendants have engaged in wire fraud. Complaint ¶71. But no pattern of racketeering activity is shown. Apparently, Plaintiff has summarized its own experience with Defendants as a "pattern of racketeering activity". This is absolutely insufficient to show a "pattern of racketeering activity". By definition, a "pattern" requires more than one act and more than one instance of racketeering activity. Plaintiff alleges that Defendants have made telephone calls and sent and received e-mails and tries to satisfy the "pattern of racketeering activity" with these generalized and conclusory allegations. See Complaint ¶73. But all Plaintiff is describing pertains to its own experience with Defendants and its own case and Defendants' alleged default of the BondIt Loan. This proves that Plaintiff's so called

-8-

"pattern of racketeering activity" can be summarized in Defendants' alleged failure to pay back the BondIt loan.  In fact, if the alleged default had not occurred, then the "pattern of racketeering activity" would immediately disappear.

C.     PLAINTIFF'S SECOND CLAIM FOR RELIEF BASED ON CONSPIRACY TO VIOLATE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT DOES NOT MEET THE REQUIREMENTS OF THE STATUTE AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(6):

RICO makes it unlawful to conspire to commit its prohibited activities.  "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.  18 U.S.C. §1962(d).  Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511 (1994). Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. "`A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage. *Id.* at 511.

Because plaintiff has failed to state a substantive RICO claim, plaintiff's RICO conspiracy claim necessarily fails. See *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

///

///

///

///

-9-

D.   PLAINTIFF'S THIRD CLAIM FOR RELIEF BASED ON A VIOLATION OF CALIFORNIA PENAL CODE §496 MUST BE DISMISSED BECAUSE THERE IS NO THEFT UNDER THE FACTS ALLEGED:

California Penal Code §496 states in relevant part:

"(a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail…." California Penal Code §496(a).

Plaintiff alleges in a very conclusory fashion that Defendants obtained money belonging to BondIt by theft and knowingly concealed and withheld such money from BondIt. Complaint ¶83. Again, no specifics are provided. Plaintiff fails to allege how Defendants have obtained Plaintiff's money by theft and even if Plaintiff alleges such a thing, it would be inconsistent with the rest of Plaintiff's Complaint. Plaintiff's Complaint clearly states that the BondIt loan was obtained pursuant to a loan agreement. Thus, there is absolutely no facts that would support Plaintiff's conclusory allegation of theft.  Because no theft has been shown, Penal Code §496(a) is inapplicable here and the cause of action based on violation of Penal Code §496(a) must be dismissed in accordance with Federal Rule of Civil Procedure 12(b)(6).

E.   PLAINTIFF'S FIFTH CLAIM FOR MONEY HAD AND RECEIVED MUST BE DISMISSED BECAUSE THE COMMON COUNT CONFLICTS WITH PLANTIFF'S OTHER CAUSES OF ACTION:

The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain. The law implies the promise from the receipt of the money to prevent

unjust enrichment. The measure of the liability is the amount received.' Recovery is denied in such cases unless the defendant himself has actually received the money." *Rotea v. Izuel,* 14 Cal.2d 605, 611 (1939).

Since the basic premise for pleading a common count . . . is that the person is thereby 'waiving the tort and suing in assumpsit,' any tort damages are out.  Likewise excluded are damages for a breach of an express contract. *Zumbrun v. University of Southern California*, 25 Cal.App.3d 1, 14-15 (1972).  Here, Plaintiff is asserting both claims for relief based on the breach of the Loan contract and claims based on fraud and concealment and misrepresentation.  Because Plaintiff has an extensive claim for breach of an express written contract in addition to multiple tort claims, the claim for Money had and Received is inconsistent with Plaintiff's contract and tort claims.  This inconsistency cannot  withstand a Rule 12(b)(6) motion to dismiss because when there are allegations of an express contract and tort causes of action, then a cause of action for Money had and Received has no meaning and must be dismissed in accordance with the case law cited above.

F.   PLAINTIFF'S TENTH CLAIM FOR UNFAIR COMPETITION UNDER CALIFORNIA LAW MUST BE DISMISSED BECAUSE THE FACTS ALLEGED DO NOT SUPPORT AN UNFAIR COMPETITION CLAIM:

Plaintiff alleges that Defendants have committed unlawful, unfair, and fraudulent business practices in violation of the Unfair Competition Law ("UCL").  See Complaint ¶156.  This hyperbolic rendition of the alleged facts amounts to little more than an attempt to repackage Plaintiff's breach of contract, conversion and misrepresentation claims as one for unfair competition.  An action under the UCL "is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150–51 (2003). Plaintiff cannot rely on his UCL as a substitute for his contract and tort claims.

Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice." Because the statute is written in the disjunctive, it prohibits three separate types of unfair competition: 1) unlawful acts or practices, 2) unfair acts or practices, and 3) fraudulent acts or practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* 20 Cal.4th 163, 180 (1999). The problem here is that there is no business act or practice. Plaintiff is simply referring to the event of "default" as a business act. Furthermore, Plaintiff's voluntary decision to amend its loan terms cannot be classified as a "business" act. Plaintiff has failed to allege a claim under any of the three UCL prongs. As for the "unlawful" prong, Plaintiff does not allege which laws Defendants purportedly violated. See *Ingels v. Westwood One Broad. Serv., Inc.,* 129 Cal. App. 4th 1050, 1060 (2005) (holding that if the complaint fails to state a violation of an underlying law, the claim on which it is premised must fail). It is clear that Plaintiff's UCL claim is based on Plaintiff's common law breach of contract, conversion, and misrepresentation causes of action, and it fails as a matter of law because common law violations cannot form the basis for a claim under the UCL's "unlawful" prong. See *Shroyer v. New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1044 (9th Cir. 2010) (breach of contract claim insufficient to establish a violation of the unlawful prong under the UCL).

With respect to the "unfair prong" of UCL, Plaintiff's allegations are insufficient to satisfy this prong. First and foremost, as previously stated, Defendants' conduct does not pertain to any "business act". Plaintiff has failed to allege that Defendants violated any public policy that is "tethered to any specific constitutional, statutory, or regulatory provisions." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* 20 Cal.4th 163 (1999). Plaintiff's complaint includes no facts that establish that Defendants' conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247 (2010).

-12-

As to fraudulent acts and practices prong of UCL, Plaintiff's Complaint fails again because Plaintiff is neither a "consumer" nor a "competitor" with Defendants. UCL's purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011).  Thus, any fraudulent act alleged in Plaintiff's Complaint cannot be redressed by using the UCL. The type of fraud envisioned by UCL is a fraud stemming from unfair competition or false advertising as specifically stated in the statute.  To hold otherwise would allow all plaintiffs with fraud or misrepresentation claims to also have a UCL cause of action.  A result which is not supported by California law and not supported by UCL's statutory scheme.

G.   <u>PLAINTIFF'S ELEVENTH CLAIM FOR CONVERSION MUST BE DISMISSED BECAUSE THE REQUIREMENTS FOR A CONVERSION CLAIM HAVE NOT BEEN MET</u>:

First, Plaintiff's conversion claim fails because it is based solely on duties allegedly arising out of the loan Agreement.  Plaintiff's Fourth and Sixth Claims for Relief concern breach of written contract and breach of Amended written contract. Under California law, "the economic loss rule bars recovery in tort for economic damages arising out of matters governed by contract." *KB HOME v. Superior Court*, 112 Cal.App.4th 1076 (2003).   Plaintiff specifically alleges that: "Defendants converted the proceeds of the Bondlt Loan, the Alabama Tax Credit and the Puerto Rico Tax Credit because either they took and spent the proceeds of the Bondlt Loan, the Alabama Tax Credit and the Puerto Rico Tax Credit, or the proceeds were applied to other debts or obligations owed by Defendants, and each of them…" Complaint ¶162.  These are the exact same allegations that form the basis of Plaintiff's breach of contract causes of action.

Second, Plaintiff's conversion claim fails because the requirements for a conversion claim have not been met here.  'To establish a conversion, plaintiff must

establish an actual interference with his ownership or right of possession . . .. Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion.' " *Moore v. Regents of the Univ. of Cal.,* 51 Cal.3d 120, 136 (1990). Here, Plaintiff's right to ownership of BondIt Loan proceeds and various Tax credits stems from the written contractual obligations and promises made by Defendants. However, Plaintiff does not have an automatic ownership interest either in the proceeds of the BondIt Loan or the various promised Tax credits. Thus, Plaintiff's correct cause of action is a cause of action for breach of contract and NOT for conversion. In fact, it has been held that a mere contractual right of payment, without more, will not suffice for a conversion claim. *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (2010). Plaintiff claims that various Tax credits were promised as collateral to secure the BondIt Loan. Whether these tax credits actually existed or not or were promised to other parties does not turn them into converted property. Instead, such facts serve as evidence of lack of due diligence by the Plaintiff when the loan was advanced. Based on these facts, Plaintiff's Eleventh Claim for Conversion must be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

H.   <u>PLAINTIFF'S TWELFTH CLAIM FOR FRAUDULENT CONVEYANCE MUST BE DISMISSED BECAUSE THE FACTS ALLEGED ARE INSUFFICIENT TO SUPPORT A FRAUDULENT CONVEYANCE CLAIM</u>:

Under the Uniform Voidable Transactions Act, a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud a creditor. Civ. Code § 3439.04(a)(1). However, in order to state a valid cause of action under the Uniform Voidable Transactions Act, the plaintiff must identify the transfer in question and provide at least some facts concerning the transfer. A complaint that relies upon "labels and conclusions, and a formulaic recitation of the elements of a

-14-

THE **MIRKHAN** LAW FIRM, APC

cause of action does not suffice to state a cause of action." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554, 555 (2007). Plaintiff alleges: "that Defendants, and each of them, transferred the proceeds of the Bondlt Loan, the Alabama Tax Credit and the Puerto Rico Tax Credit to other parties with an intent to hinder, delay or defraud their existing and future creditors, including Bondlt." Complaint ¶168. There is no mention as to when this transfer took place, to whom was the transfer made, and the circumstances of the transfer. Merely stating that the transfer was made to "other parties" is too vague and ambiguous to withstand a Motion to Dismiss based on *Twombly.* Hence, the Complaint lacks the most basic facts necessary for a cause of action.

## IV. CONCLUSION

This case presents a classic example of a breach of contract action and a loan that has allegedly defaulted. Unfortunately, Plaintiff has decided to turn the event of the alleged default into a hugely disproportionate case with allegations of violations of a RICO cause of action along with theft. However, there are no facts that would support such disproportionate blow up of the present case. Accordingly based on the arguments presented in this Memorandum, Plaintiff's First, Second, Third, Fifth, Tenth, Eleventh, and Twelfth  must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure without leave to amend.

Respectfully Submitted.


Dated:  January 17, 2020                    THE MIRKHAN LAW FIRM, APC


                                            /s/ Mehrshad Mirkhan
                                    By:    _____
                                            Mehrshad Mirkhan
                                            ATTORNEYS FOR DEFENDANTS